<hr />

**PAFUTI TALALA, Plaintiff**

**v.**

**LOGO, MASE, MAUIA, et al., Defendants**

No. 11-1906

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: Matagalu, Lesolo, Fanuatanu, Tase, Maauga and Lepua in Aoa]

November 19, 1907

166

C. B. T. MOORE, *President of the High Court;* TUFELE, *Associate Member*

DECISION

Pafuti Talala asks this court to give her possession of seven pieces of land in the village of Aoa and the surrounding territory, and of the seven pieces, Matagalu, it is discovered in the course of the trial was named merely for form's sake, and that she really has no claim to Matagalu. And at a later part of the proceedings, it has been discovered that the only claimants to Matagalu are Salanoa and Iuli, on the one hand, and Mauia, on the other hand, and that as the principal defendants in the main case have no claim on Matagalu, this portion of land was, by agreement of all the parties, stricken from the case, and therefore is not, in any sense, included in the opinion which is to follow; but the ownership of Matagalu is to be contested between the two adverse claimants in another cause before the High Court of Tutuila, and nothing which has occurred in this case is to be construed by the courts of Tutuila hereafter as prejudicing either the rights of Salanoa or Iuli on the one hand, or the rights of Mauia on the other, and their rights in the land, whatever they may be, not being covered by this decision, remain untouched by it. But the parties to this suit, viz., Pafuti Talala on the one hand, and the defendants Logo, Masi, Mamea, Teo, Tuitagaloa, and all the other people claiming under them are declared to have no interest whatever at the present time in the land Matagalu.

Another incident of the trial was that the representatives of Salanoa and Iuli stood up in the Court and sur-

167

rendered all claim to that section of land included in the complaint of the Plaintiff, known as Lesolo; therefore, whatever may be the decision rendered in this case as between Pafuti Talala and the remaining defendants, Salanoa and Iuli, are declared to have no right whatever in the land known as Lesolo. This leaves in dispute sections of land known as Fanuatanu, Tase, Maauga, Lesolo, [sic], and Lepua with the defendants Logo and others on the one side and Pafuti Talala on the other side.

In the course of the trial, Pafuti Talala, while suing in her own name, declared that her interest in the lands was derived from Mataafa's interest; that she is Mataafa's daughter and sues in his right. This statement would do away, in the opinion of the court, with the title of Pafuti Talala entirely and preclude the possibility of making a decision in [sic] name; but in view of certain customs in Samoa, so strict a rule was not adopted in this court because this court seeks not so much technical correctness as the administration of substantial justice; therefore the case was carried on and tried upon the merits of the claim which Mataafa, a high chief of Upolu, might have had on the land. It seems from the testimony produced by the Plaintiff that one Pafuti, a titled lady of Amaile, in Upolu, sometime in the dim past, made a "malaga" to Aoa, and there became the wife of one Iuli and acquired certain rights from one Sii, in consideration of the gift of the name "Masi", to the said Sii, and in due course of time, through marriage in Upolu, and through her descendants, she became the ancestress of Mataafa, and through this descent, Mataafa acquired the title to these lands in Aoa, and this suit was brought really on his right and to determine his ownership, rather than that of Pafuti Talala.

Evidence was admitted necessarily of the genealogy which would connect Pafuti with this claim, but when Mataafa was reached, and the relationship between Mataafa

and Pafuti Talala was inquired into, the Court was answered that Pafuti Talala was suing in the right of Mataafa, and by reason of courtesy to so high a chief, the question of Pafuti Talala's relationship was not allowed to be discussed in the Court, but she was accepted as Mataafa's agent.

The ownership of Mataafa, according to the testimony of the witnesses on his behalf, began some time previous to the year 1883. How far back the title passed to Mataafa is not stated and could not be ascertained from the witnesses; but it is not necessary to go beyond the present Mataafa's time, as, from the testimony of the witnesses on his behalf, the land had passed peaceably to him, and the dispute which is here to be tried, arose, so far as this Court can ascertain, during the lifetime of the present Mataafa. The Court therefore, ruled out any further investigation back of that time. The defendants were given equal privileges to trace their genealogies, to show their connection with the land during the time of Mataafa, and when the genealogy of Logo, Masi and Teo was brought down to the lifetime of Mataafa, the real issue of the trial was drawn.

The defendants claim that they have always lived on the land; that there was no such person as Pafuti that ever lived in Aoa, or ever owned the land, and that they have been continuously in possession of the land from time immemorial.

From the statements of the witnesses taken alone, each by itself, it would be extremely difficult to reach any conclusion as to what these ancient rights might be; but there are certain agreements in the statements of the two parties which go to show that Logo and Masi were the dwellers upon these lands at the time of the alleged arrival of Pafuti in Tutuila. Pafuti Talala's witnesses say that when Pafuti went to Aoa, there were three people living in Aoa, Faatu Logo, Sii and Olomua. Logo says that originally, there

were only two people dwelling Aoa—Logo and Olomua; so that is [sic] is pretty safe to say that Logo has lived in Aoa and has been one of the people of Aoa before and since the arrival of Pafuti in that place.

The traditional transfer of the lands of Sii to Pafuti in return for the title "Masi" may or may not be correct, and it makes little difference; in fact, it makes no difference whether that transfer took place, in the remote past, or not. The real contest seems to have begun when Mataafa, in assertion of his claim, sent some subsidiary chiefs, who were his retainers or supporters, as the case might be, to regulate some matters in the village of Aoa.

When they arrived in Aoa, their authority, according to the testimony of witnesses, was ignored, and they were unable to exercise any control in the village of Aoa, because, at that time, Logo, and Masi, together with others of their party, joined in denying the authority of the name Mataafa over the lands of Aoa.

At a convenient opportunity, which, the Court is convinced from the evidence and the historical traditions of Samoa, must have been in the year 1883, Mataafa himself, as an incident of a visit to Manua, stopped at Aoa, ordered Logo, Masi, Mamea and those claiming with them, off of the lands now in controversy, and put his "Sa" upon the lands. This "Sa" was disregarded, and according to some of the witnesses for the plaintiff, and evidently their most truthful witness, Mataafa has derived no benefit from these lands since 1883, and the occupants of the lands have steadily refused to recognize him, or any other person as his representative, as having any authority or ownership in the lands.

The Samoan Lands Commission, created in consequence of the Tripartite Agreement of 1890, between Germany, Great Britain and the United States, refused to disturb undisputed adverse possession running for more than

ten years, and was upheld in so doing by the Supreme Court of Samoa up—so far as this Court knows—to the time of the division of Samoa between the United States and Germany.

The High Court of Tutuila has generally held that ten years undisputed possession would be sufficient to pass title, and in consequence of the attitude of the Samoan Lands Commission, of the Supreme Court of Samoa, and of the previous attitude of the High Court of Tutuila, the Governor of Tutuila enacted a law that ten years of adverse possession should confirm the title.

 The Court recognizes that in a country where it has not been customary to record the titles of lands in books, and the transfers of lands have been made without written deeds, that long occupancy and tradition go a long way towards giving title. It also recognizes that within ages not so very remote, when the Treaty of Partition between the United States and Germany was signed and went into effect, titles often changed hands by force more or less violent, and that one of the recognized modes of transfer was war, or force, and the fact of a title being gained by force does not in any way militate against it at the expiration of the time set for quieting titles, especially where the force seems to have been used in such times as to have given opportunity to meet it by legal process of organized government before the expiration of the time necessary to quiet the title.

 In judging of the titles in the Island of Tutuila, it is necessary for the Court to take into consideration the fact that certain titles are merely traditional and are ancient, and it would be very much against the peace of this country, and against the certainty of life to have long occupation and long, undisturbed assertion of title to lands set [sic].

171

Now, the testimony shows that Logo and Masi and the people claiming with them, have been living on these lands for generations. The testimony of both sides agrees that they were there—at least Logo was there—at the time of the coming of Pafuti, and there is no evidence of a transfer of Logo's title. It is also agreed that the family of Olomua was living there at the time, but it seems that Pafuti did not get any claim to Olomua's land at that time, and the lands that he now lives on are not in question before this Court. But it would not affect the issue before this Court to any extent to admit that Pafuti had some rights on these lands at some time previous to the year 1883, and transferred by descent these rights to Mataafa, since it is known that Mataafa's claim to these lands was disputed sometime previous to his visit, which has been fixed as in the year 1883, as nearly as it is possible for this Court to fix it, and that finding the title disputed, he visited Aoa in 1885 and was flouted, his "Sa" disregarded, the lands were occupied and his order removing the people from them disobeyed. So the history of the quarrel from 1883 to the present day is the only means that we have of deciding to whom the titles to these disputed lands belong.

It seems that after Mataafa left Aoa in the morning of a day in 1883 until the coming of Pafuti Talala to Tutuila in the year of 1903 or 1906, no claim was ever made by Mataafa in person upon these lands, and that no effort was made before the Samoan Lands Commission or the Supreme Court of Samoa to gain legal possession of these lands, and that a period of approximately twenty-three years elapsed betwen the refusal of Logo and Masi and the people claiming with them, to recognize the title to Mataafa to any lands whatever in Aoa, before Talala filed her claim.

There has been no effort made before this Court to show that one Mana, by reason of some occupancy of certain

172

portions of the lands in question, was holding these lands as a representative of Mataafa, and that he took produce off these lands and fine mats, or the ordinary tribute of ownership, to Mataafa. But it appears from the admission of his son, Pua, who testified before the Court, that if such tribute was carried by Mana to Mataafa, it was tribute not obtained by reason of his occupation of these lands, but something that he had obtained elsewhere, and that he carried secretly to Mataafa, and without the knowledge of the real occupants of the lands in dispute, and this Court can hardly recognize such an admission of title by a man who conceals the fact, or at least, never made known the fact, that he claimed to be representative of Mataafa.

It would seem that somewhere about the year 1903 or 1904—twenty or twenty-one years after the visit of Mataafa and considerably more than twenty years after the refusal of the inhabitants of Aoa to recognize the claim of Mataafa, Mana, with his son Pua, by reason of some quarrel over a head-dress or the lands themselves, entered suit in his own name for the possession of these lands, and made no claim and no mention of the lands as being the property of Mataafa, concealing this agency of Mataafa up to and beyond the period of twenty years, making it more than twice the time required by the statute of limitations.

The possession of these lands by Logo and the people claiming with him, was open, exclusive and continuous, so far as Mataafa was concerned, from the visit of Mataafa in 1883 to the visit of Pafuti Talala, as the daughter of Mataafa, in the year 1903 or 1906, which would make it more than twenty-two years between the two [sic] of any claim of Mataafa to the lands in question, and this Court cannot consider any secret, underhand communication with Mataafa as strengthening his right to hold these lands.

It is not worth while for this Court to cite the number-less authorities on the question of the settlement of titles by adverse possession. The doctrine is so well understood that it is a waste of time to discuss it.

It seems to this Court that whatever may have been the traditional right of Mataafa and his people to control these particular pieces of land, that right is dead; that Pafuti Talala, either in her own name or as the Agent of Mataafa, has no right or title to any of the lands named in her complaint, and it is so ordered. Costs will be assessed against Plaintiff.